UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Paulina Starr, : Case No. 1:14-cv-600
    Plaintiff, :
vs. :
The Ebenezer Road Corporation, :
    Defendant. :

**ORDER**

Before the Court is Defendant's motion for summary judgment.  (Doc. 32) Defendant argues that it is entitled to judgment on Plaintiff's claims of interference and retaliation under the Family and Medical Leave Act ("FMLA").  Plaintiff opposes the motion (Doc. 34), and Defendant has filed a reply.  (Doc. 35)  For the following reasons, the Court will deny Defendant's motion.

**FACTUAL BACKGROUND**

Paulina Starr is a licensed practical nurse.  The Ebenezer Road Corporation owns and operates the Western Hills Retirement Village ("WHRV"), where Starr was employed from June 2011 until April 30, 2014.  Starr normally worked the 3 p.m. to 11 p.m. shift.  Starr reported to Susan Mountel, the Director of Nursing.  Sandra Gay is the Administrator of WHRV, and was responsible for approving or denying employee requests for FMLA leave.  WHRV's Employee Handbook includes a section on FMLA, and states in part that "Notice and application for FMLA leave may be given either verbally or in writing.  An employee must provide as much notice as is reasonable and practicable under the circumstances. ... Where the need for leave is foreseeable (e.g.,

expected birth, planned adoption, or planned medical treatment), notice must be given at least 30 days prior to the beginning of the requested leave." (Doc. 32, Ex. 1 at PAGEID 336)

Starr's husband George lives in Arizona. Starr lived there with him from 2005 to July 2010, when she moved to Cincinnati to help her daughter. Starr visits her husband every year in order to complete their tax returns, and Starr went to Arizona in March 2014 for that reason. While she was visiting, George went to his dentist to follow up with him about a broken tooth. George had consulted with the dentist about this tooth in September 2013, and was told he should have the tooth extracted. George decided to put off any oral surgery. On March 21, 2014 George and Starr visited George's dentist, Dr. Green, who recommended that George consult with an oral surgeon, Dr. Hammond. George was evaluated by Hammond later the same day, and Hammond recommended oral surgery followed by dentures. The Starrs discussed the cost for this treatment with Hammond's office staff, as they were unsure of their ability to cover those costs ($12,000 to $14,000).

Paulina also obtained a letter typed on Dr. Hammond's office stationary that is dated March 21, 2014, and which states that "George Starr is scheduled to be seen in our office for Oral Surgery. Because of the type of procedure we will be performing it is crucial that Paulina (his wife) be available to provide care for this patient for 10 days post surgery." (Starr Dep. Ex. 9) Paulina Starr testified that the date for George's surgery was not scheduled during the March 21 consultation with Dr. Hammond. Dr. Hammond testified that his office does not schedule surgery until dental impressions are completed and dentures are being fabricated. Dr. Hammond schedules the surgery

only after he is informed that the patient's impressions have been successfully completed, and then it is usually about two to three weeks before he can schedule a surgical appointment.

Starr returned to Cincinnati and her job in late March. She did not give Dr. Hammond's letter to anyone at WHRV upon her return. On April 16, George's dentist took the "final" impressions for fabrication of his dentures; at that point, Starr believed she could reasonably estimate that the surgery would take place around the second week of May, even though George's actual surgery appointment had not been scheduled. (Starr Dep. at 157) On Friday April 18, Starr called Susan Mountel and told her that George would be having surgery around the second week in May, and that Starr would need ten days off work to take care of him after surgery. Mountel responded "You don't have the time. Put in your notice. I need one downstairs, and I have three on vacation."[1] (Starr Dep. at 156)

The following Monday, April 21, Starr called WHRV's personnel manager, Roberta Stiens and described her conversation with Mountel. Starr told Stiens she wanted something in writing that her request for leave was denied. Stiens told Starr that she would talk to Sandy Gay and get back with her. (Starr Dep. at 163) Starr called Stiens again the next day, asking if she had talked with Gay. Starr testified that Stiens told her:

> "Paulina you don't have any time off, you ... are not eligible because you don't have any time off." Then she said, "This is not a life- ... " something, a life-something event. My mind just went blank. A life changing, or

---

[1] The Court assumes that Mountel was referring to one nurse downstairs, and three nurses taking vacation.

>something like that.  And I said - well at that point I asked her for FMLA papers.  And she said that she would give them to me along with a form showing that I was not qualified.

(Starr Dep. at 164-165)  Starr could not recall the specific word Stiens used to describe the situation, but "it was like a life and death situation, life changing event ...".  (Id. at 165)  Starr picked up the FMLA paperwork from Stiens' office before she started her shift later that day.  Included in the paperwork was a letter from Stiens that stated in part: "It has been explained to you that there are a number of nurses already scheduled off work during this time frame you have requested and it will be impossible for us to cover your shift.  Unless this Request can be rescheduled or medical documentation supports this is a life-threatening event you will have no other choice but to resign your position as a Staff Nurse at Western Hills Retirement Village.  Please review this paperwork, obtain the requested medical documentation, and submit it to me no later than fifteen days from today's date.  (Starr Dep. 183, and Ex. 14)  Stiens admitted that it was a mistake, an error, to tell Starr that she was not eligible if George's condition was not "life-threatening."  (Stiens Dep. at 33-34)

      Dr. Hammond completed the FMLA medical certification forms and signed them on April 24, stating that George's surgery was scheduled for May 13.  Starr gave the completed paperwork to Roberta Stiens the morning of April 25, and Starr worked her normal 3 p.m. shift that day.

      In a declaration filed with her opposition brief, Starr states that before she started her April 25th shift, she went to Mountel's office and asked Mountel whether her FMLA leave request would be approved.  Mountel called Sandy Gay and spoke with her by telephone.  Mountel then told Starr that her FMLA request "had been turned over to the

-4-

company's attorney." (Doc. 34-1 at ¶8) Mountel also told Starr that if WHRV approved her FMLA leave request, Mountel would put Starr on the night shift when she returned from leave. Starr described Mountel's tone of voice as "aggressive," and that she was visibly irritated by Starr's request for leave. Later the same day during Starr's shift, Mountel repeated to Starr that she would be put on night shift if she took medical leave. Starr asked to speak with Mountel in a more private area, and she asked Mountel when she had decided to transfer Starr to night shift. Mountel confirmed that would happen only if Starr's FMLA request was approved, and she actually took leave. Starr asked if a newly hired nurse could be assigned to night shift; Mountel said no, "and that she only had to hold my 'job,' not my 'position.'" (Id. at 11) Starr confirmed that she was going to take leave to take care of George, and Mountel asked her if she would quit rather than work nights. Mountel said her only other option (aside from quitting or working nights) was to give two weeks notice, and work for the facility on an as-needed, "PRN," basis. That arrangement does not provide benefits.

Starr heard nothing further about her request before April 30, when she called Stiens and asked if there had been a decision. Stiens said no decision had been made. Starr decided to resign from her position and submitted a letter of resignation addressed to Susan Mountel. Her letter states:

> I regretfully need to turn in my resignation from my employment. As you have been informed, it is necessary for me to be present during the post-operative time to care for my husband. I regret that this need was not regarded well with nursing administration; as evidenced by being told that this would never be approved, that it needed to be life threatening event per the letter from Roberta, that I should re-schedule the surgery - per Susan, that I would be placed on night shift if I chose to take the FMLA and that my request has been sent to the attorney. I feel like my presence is not welcome nor is my returning valued and I feel threatened and

-5-

> bullied. I do not have the opportunity to put in a two week notice due to the fact that I need the time off which is only in 12 days; which now I am not able to take a pm position. I will miss the residents that I provided with compassion, integrity, and skilled nursing care.

(Starr Dep. Ex. 17)

Plaintiff filed her complaint on July 23, 2014, raising two claims for relief: that WHRV interfered with her exercise and/or attempted exercise of her rights under the FMLA, in violation of 29 U.S.C. §2615(a)(1); and that WHRV discriminated and/or retaliated against her for attempting to exercise her FMLA rights, resulting in her constructive discharge, in violation of 29 U.S.C. §2615(a)(2).

## DISCUSSION

Summary Judgment Standards

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Mt.

Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 848 (6th Cir. 2002).  Once that occurs, the party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," and must make an affirmative showing with proper evidence in order to defeat the motion.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The court must construe the record in the light most favorable to the non-movant, and draw all justifiable inferences in the non-movant's favor.  United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250.  "If the evidence is merely colorable, ...  or is not significantly probative, ... the court may grant judgment."  Anderson, 477 U.S. at 249-50 (citations omitted).

FMLA Claims

The Family and Medical Leave Act prohibits employers from taking certain actions against employees who exercise their rights to request leave as provided by the statute.  29 U.S.C. §2615 states:

(a) Interference with rights.

(1) Exercise of rights. It shall be unlawful for any employer to

> interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title.
>
> (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title.

Starr has pled both types of claims, and they are analyzed separately.

**Interference**:  To prevail on an FMLA interference claim, Starr must establish that (1) she is an eligible employee; (2) the defendant is a covered employer; (3) the employee was entitled to leave under the FMLA; (4) the employee provided notice of her intention to take leave; and (5) the employer denied the employee the benefits to which she was entitled.  Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

WHRV argues that Starr cannot satisfy the fourth and fifth prongs of her prima facie case, because Starr failed to submit proper notice of her intent to take FMLA leave.  It cites a pertinent regulation, 29 C.F.R. 825.302, setting forth employee notice requirements for foreseeable FMLA leave.  (Starr conceded that George's oral surgery and her need to take leave were foreseeable.)  In pertinent part the regulation states:

> (a) Timing of notice. An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on an expected birth, placement for adoption or foster care, planned medical treatment for a serious health condition of the employee or of a family member, ... .  If 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable. ... .  For foreseeable leave due to a qualifying exigency[,] notice must be provided as soon as practicable, regardless of how far in advance such leave is foreseeable.  Whether FMLA leave is to be continuous or is to be taken intermittently or on a reduced schedule basis, notice need only be given one time, but the employee shall advise the employer as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown. In those cases where the employee is required to

-8-

> provide at least 30 days notice of foreseeable leave and does not do so, the employee shall explain the reasons why such notice was not practicable upon a request from the employer for such information.
>
> (b) As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case. When an employee becomes aware of a need for FMLA leave less than 30 days in advance, it should be practicable for the employee to provide notice of the need for leave either the same day or the next business day. In all cases, however, the determination of when an employee could practically provide notice must take into account the individual facts and circumstances.

WHRV argues that as a matter of law, Starr failed to provide the required notice because she did not tell anyone of her need for leave at least 30 days prior to George's surgery. Starr knew on March 21 that George was likely facing surgery, but she provided no notice to WHRV until April 18, when Starr told Mountel that she would need time off around the second week of May. Starr conceded that she did not ask Dr. Hammond to reschedule George's surgery. WHRV cites Dr. Hammond's testimony that, from his standpoint, the timeline for George's extractions was "variable." He testified: "I don't remember if I told him there was any urgency to this. I generally encourage patients with dental abscesses which he had on the radiographs to try to get the treatment done sooner than later. But ultimately, again, I let the patient decide when they want to schedule." (Hammond Dep. at 22) WHRV claims that if it had made a decision on Starr's request, it would have been justified in asking her to delay her leave, or to reschedule George's surgery due to undue hardship it would place on WHRV.

When Starr first notified Mountel on April 18 of her need for leave, Mountel's response was that Starr has no paid vacation time left and she should resign. WHRV

argues that this conversation did not involve FMLA leave, suggesting that it was limited to a request for paid leave. But the FMLA regulations state that an employee is not required to asserts rights under the FMLA or even refer to it when giving notice of the need for a leave. See 29 C.F.R. 825.302(c), stating in pertinent part:

> When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. ... **In all cases**, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken. (Emphasis added)

Starr told Mountel that she would need to care for her husband after his surgery. The fact that she did not specifically request FMLA leave, or mention FMLA leave to Mountel, does not control the question of whether adequate notice was given. At the least, the record does not permit entry of judgment as a matter of law in WHRV's favor on that issue.

The Sixth Circuit has stated that the question of whether an employee has provided adequate notice "is an intensely factual determination." Festerman v. County of Wayne, 611 Fed. Appx. 310, 315 (6th Cir., May 8, 2015)(internal citation omitted). See also, Hopson v. Quitman Co. Hospital and Nursing Home, Inc., 126 F.3d 635, 640 (5th Cir. 1997): "... it is our opinion that the adequacy of Hopson's notice is a fact issue. ... Such determinations are better left to the jury with its traditional function of assessing human behavior and expectations." Starr readily conceded that she did not inform WHRV about the possibility of George's surgery when she first returned to Cincinnati in late March. She explained that she did not know when that surgery would take place. And when she learned that it had been scheduled for a date certain, she provided notice

within 48 hours.  Whether Starr's choice to wait until she knew the date certain was reasonable and sufficient notice is a factual dispute that a jury should determine.

WHRV also argues that it never denied Starr's request for FMLA leave.  She voluntarily resigned before WHRV had acted on her request.  WHRV cites an email that Mountel sent to Gay at 9:55 A.M. on April 30, 2014, asking Gay, "Any news on FMLA for Paulina?"  (Doc. 32, Ex. 9)  Starr submitted her resignation two hours later.  WHRV argues that Starr's voluntary decision entitles it to judgment on Starr's interference claim.

The FMLA prohibits the explicit denial of an employee's rights, but it also prohibits actions that deter or actively discourage an employee from requesting or pursuing those rights.  Saroli v. Automation & Modular Comp., Inc., 405 F.3d 446, 454 (6th Cir. 2005).   The facts, seen in the light most favorable to Starr, raise a genuine dispute whether a reasonable employee would be discouraged from pursuing a request for FMLA leave.  The first time Starr told Mountel that she needed medical leave, Starr was told she had no time available and should resign.  The following Monday, she spoke to Stiens, who said she would talk to the facility manager Sandy Gay.  The next day, Stiens told her that she did not have any time off available, and she was not eligible because it was not a life-threatening situation.  When Starr asked for FMLA paperwork, Stiens told her she would give her a form showing that she was not entitled to leave.  And Stien's letter that accompanied that paperwork informed Starr that unless the surgery was rescheduled or it involved a "life-threatening event," Starr had no choice but to resign her position.  When she asked Mountel again on April 25 about her request, Mountel told her that her paperwork had been given to the company's attorney.

Mountel also threatened to put Starr on the night shift if she took leave.  When Starr made it clear that she intended to leave to care for George, Mountel said her options were to quit, work nights when she returned, or work on-call without benefits.  And on April 30, Stiens told Starr that no decision had been made.  A reasonable juror could accept Starr's recitation of these events, and conclude that WHRV personnel were actively and intentionally discouraging Starr from pursuing her rights under the FMLA.  For these reasons, WHRV is not entitled to judgment as a matter of law on Starr's interference claim.

**Retaliation**: A prima facie discrimination or retaliation claim under the FMLA requires Starr to establish: (1) she engaged in FMLA-protected activity; (2) her employer knew of that activity; (3) the employer took an adverse employment action against her; and (4) a causal connection between her protected activity and the adverse action. Killian v. Yorozu Auto. Tenn., Inc., 454 F.3d 549, 556 (6th Cir. 2006).  An adverse action is one that materially and adversely alters the terms or conditions of a plaintiff's employment.

WHRV contends it is entitled to judgment as a matter of law because it is undisputed that it took no adverse action against Starr.  She voluntarily resigned before a decision had been made on her FMLA request.  Starr alleges in her complaint and argues in her opposition brief that she was constructively discharged, which satisfies her burden of demonstrating an adverse employment action.  WHRV rejects her contention, arguing that no reasonable employee could conclude that the environment at WHRV was "hostile," such that her resignation amounts to an involuntary, constructive discharge from her job.

The Sixth Circuit has recognized that an employee's constructive discharge can be an adverse employment action. See Saroli, 405 F.3d at 451, where the court quoted Logan v. Denny's, Inc., 259 F.3d 558, 568-69 (6th Cir. 2001), which held:

> To demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) the employer … deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit…. To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined.

The determination of whether a reasonable person would feel compelled to resign due to intolerable working conditions depends on the facts raised in each case. The Sixth Circuit recited a list of non-exclusive factors that are relevant to this determination, including demotion, reduction in salary or responsibilities, reassignment to menial or degrading work, badgering or humiliation that is calculated to encourage the employee's resignation, or offers of continued employment on terms that are less favorable than the employee's current job. Logan v. Denny's, 259 F.3d at 569. Many of these factors are present here: Mountel told Starr she should resign and work on-call, and threatened to put her on the night shift. Stiens told her that she was not eligible for FMLA leave because George's condition was not life-threatening.

In Harcourt v. Cincinnati Bell Telephone Co., 383 F.Supp. 2d 944 (S.D. Ohio 2005), this Court held that a reasonable juror could conclude that plaintiff's resignation amounted to a constructive discharge after her employer insisted on enforcing policies which violated the FMLA. The Court noted that her claim should be examined against the stated purpose of the FMLA, which Congress found included the need "... 'to balance the demands of the workplace with the needs of families, to promote the

stability and economic security of families, and to promote national interests in preserving family integrity.' ... In other words, Congress enacted the FMLA to relieve employees from having to choose between keeping their jobs and taking care of their families." Id. at 963 (quoting 29 U.S.C. §2601(b)(1)).

As with Starr's interference claim, the Court finds that there is a genuine dispute whether Starr was constructively discharged. There is no dispute that Starr's request for FMLA leave set in motion the chain of events that led to her resignation/constructive discharge. The jury must determine whether WHRV deliberately created an intolerable environment and did so with the intent to force Starr to resign or accept a more menial job. WHRV is not entitled to summary judgment on Starr's discrimination/retaliation claim under the FMLA.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion for summary judgment (Doc. 32) is denied.

SO ORDERED.

DATED: December 4, 2015
                                                         s/Sandra S. Beckwith
                                                         Sandra S. Beckwith, Senior Judge
                                                         United States District Court